IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2016

**ARTHUR RAY TURNER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County
No. 95-C-1691     Steve Dozier, Judge**

_____

**No. M2015-01572-CCA-R3-PC – Filed July 22, 2016**

_____

The petitioner, Arthur Ray Turner, appeals the denial of post-conviction relief from his 2012 Davidson County Criminal Court jury convictions of especially aggravated kidnapping, aggravated robbery, aggravated rape, and attempted aggravated rape, for which he received a sentence of 70 years. In this appeal, the petitioner contends only that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Chadwick Wyatt Jackson, Nashville, Tennessee, for the appellant, Arthur Ray Turner.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Davidson County Criminal Court jury convicted the petitioner of especially aggravated kidnapping, aggravated robbery, four counts of aggravated rape, and one count of attempted aggravated rape, and the trial court imposed a 70-year sentence. This court affirmed the convictions on direct appeal but remanded the case to modify the especially aggravated kidnapping conviction to reflect the appropriate release eligibility status. _See State v. Arthur Ray Turner_, No. M2013-00277-CCA-R3-CD (Tenn. Crim. App., Nashville, May 28, 2014), _perm. app. denied_, not for citation (Tenn. 2014).

In _Arthur Ray Turner_, this court stated the facts of the case. The defendant was originally indicted in July 1995 and pleaded guilty to especially aggravated

kidnapping, aggravated robbery, and two counts of aggravated rape. *Id.*, slip op. at 2. The defendant was later permitted to withdraw his guilty plea, and the case proceeded to trial in 2012. *Id.*, slip op. at 4. The proof at trial established that the 33-year-old, married victim was leaving an exercise class at a local fitness center on an evening in March of 1995 when the defendant accosted her at gunpoint and forced his way into her vehicle. *Id.*, slip op. at 13-14. The defendant drove a short distance, then stopped the vehicle and forcibly penetrated the victim's mouth with his penis. *Id.*, slip op. at 14. The defendant then forced the victim out of the vehicle and bent her over the hood of the vehicle, where he proceeded to repeatedly but unsucessfully attempt anal penetration. *Id.*, slip op. at 14-15. Next, the defendant forced the victim into the back seat of her vehicle and vaginally penetrated her. *Id.*, slip op. at 15. Because the car doors were open and the interior lights were illuminated, the victim was able to get "a good view" of the defendant. *Id.*

Following that attack, the defendant demanded that the victim enter the trunk of her vehicle. He drove around for a period of time, then stopped the vehicle and opened the trunk. *Id.* The lights in the trunk illuminated the defendant's face. *Id.* The defendant, who still possessed a handgun, forced the victim to undress and penetrated her mouth with his penis. *Id.* He then forced the victim into the back seat a second time and once again raped her vaginally. *Id.* The defendant demanded that the victim return to the trunk, and, many hours later, she managed to escape when the defendant parked the car and entered a residence at 7822 Clearwater Court. *Id.*, slip op. at 15-17.

The victim later identified the defendant from a photographic lineup, and police officers recovered the victim's vehicle from 7822 Clearwater Court. *Id.*, slip op. at 17-18. The defendant was also present at the residence, and he admitted kidnapping and raping a woman. *Id.*, slip op. at 18.

On December 29, 2014, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court conducted an evidentiary hearing on June 15, 2015.

At the evidentiary hearing, the petitioner testified that the victim had "stated that her attacker was 5 foot 5 to 5 foot 8" and looked "just like [the actor] LeVar Burton." The petitioner stated that he was "6 foot 2 and a half, light-skinned with hazel green eyes" and did not "look like LeVar Burton." Following the victim's testimony to this effect, the petitioner asked his two trial attorneys to locate a photograph of LeVar Burton to assist in his defense, but trial counsel told the petitioner that they had been unable to find one.

The petitioner recalled that the State had sought to prevent the defense from mentioning the victim's alleged prior hospitalization for mental health issues. When the petitioner mentioned this issue to trial counsel, counsel responded that it was nothing "to worry about."

The petitioner testified that he had never been informed that the judge who presided over his trial in 2012 had been employed by the district attorney's office in 1995 when the petitioner was indicted. According to the petitioner, trial counsel never raised the trial judge's potential conflict of interest as an issue.

With respect to the petitioner's indictment, he asserted that the original warrant or indictment was void because the statute of limitations had expired. The petitioner maintained that the State was required to issue an amended indictment following the withdrawal of the petitioner's guilty pleas, although the petitioner acknowledged that trial counsel disagreed with him on this point.

Trial counsel testified that he and a younger associate had represented the petitioner at trial. Trial counsel stated that he and his associate met with the petitioner "[m]any times" in preparation for the trial, and trial counsel recalled that the petitioner "was very adamant" about going to trial and "had very strong opinions" about the handling of his case. Trial counsel agreed that the evidence against the petitioner "was quite overwhelming," and trial counsel stated that he "had very strong reservations about the proof against" the petitioner.

With respect to the petitioner's desire to question the victim about alleged mental health issues, trial counsel testified that the tactic would not "have been at all effective." Trial counsel believed that questioning the victim about having received counseling would have only served to increase her credibility with the jury and to portray her in an even more sympathetic light. Trial counsel testified that his strategy was to pursue mistaken identity rather than fabrication by the victim.

Trial counsel recalled that the victim had compared the petitioner's appearance to LeVar Burton, and he stated that, when he examined a photograph of the actor, he believed that the "picture actually looked relatively close to" the petitioner. Because of the perceived similarities between Mr. Burton's and the petitioner's appearances, trial counsel made the strategic decision not to introduce into evidence a photograph of Mr. Burton, believing that to do so would have been damaging to the petitioner's case.

Trial counsel testified that the petitioner had "grave concerns about how he had been charged," believing that new warrants or indictments were necessary following

the withdrawal of his guilty pleas. Because this was an important issue to the petitioner, trial counsel conducted research but was unable to find any legal justification for the petitioner's position.

With this evidence, the post-conviction court denied relief, finding that the petitioner failed to support his claim of the necessity of judicial recusal with any evidence. The court, in a footnote to its findings, stated that the trial judge "was never involved in the petitioner's case," noting that the petitioner had been arrested on March 16, 1995, and had pleaded guilty on November 16, 1995, but that the trial judge had left the District Attorney's office in June 1995. With respect to the victim's comparison of the petitioner to LeVar Burton, the court found as follows:

> The petitioner claims that trial counsel was ineffective because he did not properly impeach the testimony of the State's witness that identified her attacker as a 5'5" – 5'8" male black who looked like actor LeVar Burton. The [c]ourt accredits the testimony of trial counsel, that he did not want to introduce the photograph of LeVar Burton because he believed that there was a resemblance between them. The petitioner testified that it would not be possible to identify him as LeVar Burton because the petitioner has light eyes. The [c]ourt notes that the victim testified that the attacker looked like LeVar Burton, *except* the eyes. The [c]ourt finds that this was a strategic decision by trial counsel to shield the jury from finding a resemblance and accrediting the victim's testimony and identification. The petitioner has failed to prove this allegation by clear and convincing evidence. The issue is dismissed.

> . . . .

> The petitioner's pro se petition alleges that he is entitled to relief based on violations of his constitutional rights after his conviction was vacated. The petitioner alleges that he was not rearrested or *Mirandized* after being transported from TDOC custody in 2010 to DCSO custody to await trial and that the statute of limitations precluded prosecution. The [c]ourt accredits the testimony of trial counsel, that he was aware of the petitioner's concerns related to this issue and that he did legal research but did not find any basis to support this position. The [c]ourt finds no merit to

these various issues. The petitioner has failed to prove these allegations by clear and convincing evidence. The issues are dismissed.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to introduce into evidence a photograph of LeVar Burton, by failing to question the victim about an alleged history of mental illness, by failing to seek recusal of the trial judge, and by failing to raise an issue regarding the lack of a new charging instrument. The State contends that the court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and

used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court. Trial counsel testified – and the trial court explicitly accredited his testimony – that he chose not to introduce into evidence a photograph of LeVar Burton because the petitioner's passing resemblance to the actor could have been potentially detrimental to the petitioner's case. Likewise, trial counsel stated that he elected not to question the victim about any alleged mental health issues because he believed that to do so would have only increased the jury's sympathy toward the victim. We will not second-guess these reasonable trial strategies. *See Adkins*, 911 S.W.2d at 347. Furthermore, trial counsel testified that he researched the issue of the adequacy of the charging instruments and determined that no legal justification existed to pursue the issue. Again, this testimony was explicitly accredited by the trial court, and because of trial counsel's adequate preparation, this tactical decision does not entitle the petitioner to relief. *See Cooper*, 847 S.W.2d at 528. Finally, the petitioner has failed to demonstrate that he was prejudiced by trial counsel's failure to seek recusal of the trial judge. *See, e.g., Owens v. State*, 13 S.W.3d 742, 757 (Tenn. Crim. App. 1999), *perm. app. denied* (Tenn. Feb. 28, 2000) (holding that trial court did not abuse its discretion by denying recusal motion when trial judge had been one of 70 employees of the local district attorney's office and had never been assigned to the petitioner's case). As such, we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.

The petitioner failed to establish that he was denied the effective assistance of counsel at trial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE